UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER GRAY,

    Plaintiff,

v.                                                                CASE NO.:

HOLLYWOOD EAST PEST CONTROL INC. d/b/a
PESTBEAR, a Florida profit corporation,
and ENGAGE PEO, LLC,
a Florida limited liability company,

    Defendant.
_____/

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, CHRISTOPHER GRAY (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Defendants HOLLYWOOD EAST PEST CONTROL INC. d/b/a PESTBEAR (hereinafter "PESTBEAR"), a Florida profit corporation, and ENGAGE PEO, LLC, (hereinafter "ENGAGE"), a Florida limited liability company, and in support of states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

2. This action involves federal questions regarding the Plaintiff's rights under the Families First Coronavirus Response Act ("FFCRA") and Emergency Paid Sick Leave Act ("EPSLA"), which are enforced through sections 15(a)(3), 16 and 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216-217. *See* 29 C.F.R. § 826.150.

3. Plaintiff is an individual who is over the age of eighteen.

4. Plaintiff resides in Seminole County, Florida.

5. Plaintiff performed work for the Defendants in Seminole County, Florida.

6. Defendants conduct business in Seminole County, Florida.

7. Venue is proper in the Orlando Division of the Middle District of Florida pursuant to Local Rule 1.02(b)(2).

## PARTIES

8. Plaintiff was hired by Defendants PESTBEAR and ENGAGE on or about August 2019 as a Pest Control Technician.

9. At all relevant times, PESTBEAR was a Florida for Profit Corporation engaged in business in Casselberry, Florida (Seminole County).

10. At all relevant times, ENGAGE was a Limited Liability Company engaged in business in Casselberry Florida (Seminole County).

11. Defendants jointly own, operate, control, and manage a business which performs pest control services.

12. Plaintiff was assigned by Defendants to work in Casselberry, Seminole County, Florida.

13. Defendants PESTBEAR and ENGAGE have joined and combined to form and constitute a joint employer and/or single enterprise by:

    (a) performing related activities;

    (b) exercising unified operation or common control over Plaintiff;

    (c) operating for a common business purpose with respect to PESTBEAR;

    (d) the degree of control ENGAGE and its employees demonstrate over PESTBEAR's employees;

    (e) the degree of supervision ENGAGE has over the work of PESTBEAR;

  (f) Defendants PESTBEAR and ENGAGE jointly determine the pay rates or the methods of payment of PESTBEAR employees;

  (g) Defendants PESTBEAR and ENGAGE, jointly and severally, have the right to hire, fire, or modify the employment conditions of PESTBEAR's employees, including Plaintiff;

  (h) Defendants acted directly or indirectly in the interest of each other with respect to the Plaintiff;

  (i) Defendants PESTBEAR and ENGAGE are associated with respect to the employment of Plaintiff,

  (f) Defendants PESTBEAR and ENGAGE share control of Plaintiff's employment and separation of employment, directly or indirectly.

14. Defendants PESTBEAR and ENGAGE's officers, directors and/or managers were ultimately in a position of authority over the business decisions that led to the FFCRA, EPSLA, and FLSA violations.

15. At all relevant times, Defendants PESTBEAR and ENGAGE jointly employed the Plaintiff.

## FACTUAL ALLEGATIONS

16. Congress enacted the FFCRA, in part, to safeguard employees impacted by the COVID-19 pandemic ("COVID-19).

17. Defendant PESTBEAR is subject to the FFCRA.

18. Defendant ENGAGE is subject to the FFCRA.

19. Among the FFCRA's protections is the EPSLA.

20. The EPSLA mandates covered employers to provide up to two (2) weeks of paid

sick leave and job protection for employees who, among other things, are (a) subject to a governmental quarantine or isolation order related to COVID-19 or (b) advised by a health care provider to quarantine or self-isolate due to concerns related to COVID-19.

21. Additionally, 29 C.F.R. § 826.150 prohibits employers from discharging, disciplining, or discriminating against ant employee because employee took paid sick leave under the EPSLA.

22. Likewise, an Employer is prohibited from discharging, disciplining, or discriminating against any Employee because such Employee has filed any complaint or instituted or caused to be instituted any proceeding, including an enforcement proceeding, under or related to the EPSLA, or has testified or is about to testify in any such proceeding.

23. At all times relevant, Plaintiff was employed by Defendants as a Pest Control Technician.

24. In early September 2020, Defendants assigned Plaintiff to work in a home where the owner had contracted COVID-19.

25. Another resident informed Plaintiff that the owner had COVID-19.

26. On or around September 12, 2020, Plaintiff began to feel ill with flu-like symptoms.

27. On September 15, 2020, Plaintiff's young cousin who resides with Plaintiff, fell ill as well.

28. Plaintiff immediately informed his manager.

29. Plaintiff's manager, Alfredo, told Plaintiff that Regional Manager, Jeremy, stated "If you claim COVID-19, we will replace you with someone that will work."

30. On September 15, 2020, Plaintiff presented to True Health medical practice in Sanford, Florida.

31. Based on his symptoms and those of his immediate family member, Plaintiff was screened for COVID-19.

32. Plaintiff was instructed by True Health to follow CDC Guidelines.

33. Specifically, Plaintiff was instructed by True Health to self-isolate for 14 days.

34. Plaintiff immediately informed his manager, Alfredo, of the physician's instructions.

35. On September 21, 2020, Plaintiff texted Alfredo and asked whether he could return to work while awaiting his tests results.

36. Alfredo responded to the Plaintiff, "Definitely not". *See* text messages attached hereto as **Exhibit "A".**

37. On September 23, 2020, Plaintiff was informed that his test for COVID-19 was negative. *See* Lab Report Results dated September 23, 2020 attached hereto as **Exhibit "B"**.

38. Plaintiff immediately informed Alfredo via text message. *See* **Exhibit "A"**.

39. Alfredo informed Plaintiff to present to work the next day, September 24, 2020.

40. On September 24, 2020, Plaintiff presented to work and was told to go home "until Human Resources made a determination".

41. Plaintiff was called to return to the office to sign a 90-day final warning because he "took extra days off".

42. Plaintiff once again presented to work, for the second time, on September 24, 2020.

43. Alfredo handed Plaintiff a Warning Notice.

44. The Warning Notice alleged Plaintiff received his COVID-19 test results on *September 18, 2020* and failed to notify managers or return to work on September 21, 2020. It further stated that as a result Plaintiff had taken 3 days of unapproved time from work. *See*

ENGAGE Worksite Employee Waning Notice dated September 24, 2020 attached hereto as **Exhibit "C".**

45. Upon reviewing the Warning Notice, Plaintiff explained it was incorrect.

46. Plaintiff then proceeded place a call to True Health, on speaker phone, while his manager, Alfredo, was in the room.

47. The nurse who tended to Plaintiff's call confirmed to Alfredo that Plaintiff had received his test results only a day before, on September 23, 2020.

48. Alfredo stepped away from the room and told Plaintiff he would call Branch Manager, Toby Brinkley.

49. Alfredo came back and advised Plaintiff he was terminated.

50. Plaintiff was terminated for allegedly taking 3 days of unapproved time from work while he was under physicians' orders to self-isolate and failing to sign the Warning Notice dated September 24, 2020.

51. However, Plaintiff received the results of his COVID-19 test on September 23, 2020.

52. Plaintiff did not receive the results of his COVID-19 test any earlier than September 23, 2020.

53. Plaintiff's Lab Report Results were dated September 23, 2020. *See* **Exhibit "B.**

54. Additionally, Defendant refused to pay the Plaintiff wages from September 21, 2020 through September 23, 2020, while Plaintiff was under physician's instructions to self-isolate.

55. Defendant interfered with Plaintiff's rights under FFCRA and EPSLA.

56. Defendant retaliated against Plaintiff in violation of his rights under FFCRA and EPSLA.

### COUNT I – VIOLATION OF THE FFCRA/EPSL
### (Defendants Hollywood East Pest Control, Inc. d/b/a Pestbear and Engage PEO, LLC)

57. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 56 above as if fully set forth herein.

58. The EPSLA requires employers to provide up to two weeks of paid sick leave and job protection for employees who, among other things, are (a) subject to a governmental quarantine or isolation order related to COVID-19 or (b) advised by a health care provider to quarantine or self-isolate due to concerns related to COVID-19.

59. These paid leave provisions apply to leave taken between April 1, 2020, and December 31, 2020.

60. Paid sick time under the EPSLA must be granted in addition to any pre-existing paid leave benefits provided.

61. The EPSLA also prohibits employers from requiring employees to use or exhaust their paid time off before availing themselves of paid leave under the Act.

62. Plaintiff was entitled to up to two weeks (or 80 hours) of paid sick leave pursuant to the EPSLA because he was advised by a health care provider to self-isolate (and was required to do so by governmental order) due to his COVID-19 diagnosis.

63. Yet, Defendants PESTBEAR and ENGAGE blatantly disregarded their obligations under the EPSLA and refused to pay the Plaintiff for the dates of September 21, 2020 through September 23, 2020.

64. This is a direct violation of EPSLA's requirements.

65. An Employer who fails to provide its Employee Paid Sick Leave under the EPSLA is considered to have failed to pay the minimum wage as required by section 6 of the FLSA, 29 U.S.C. 206, and shall be subject to the enforcement provisions set forth in sections 16 and 17 of the FLSA, 29 U.S.C. 216, 217.

66. Defendants PESTBEAR and ENGAGE's violation of the EPSLA's requirements was willful.

67. As a direct and proximate result of Defendants' violation of the EPSLA, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any practice which violates the FFCRA or EPSLA;

b. Order Defendants to make Plaintiff whole, by compensating Plaintiff for unpaid sick leave wages, lost wages and benefits, including front pay, back pay with prejudgment interest, liquidated damages, and other remuneration for physical and mental pain, anguish, pain and humiliation from being terminated due to the loss of his long-term employment as a result of Plaintiff's diagnosis and taking of sick leave;

c. Award attorney's fees and costs pursuant to FFCRA and EPSLA;

d. Award punitive damages; and

e. Award any other relief this Honorable Court deems just and proper.

**COUNT II – RETALIATION UNDER THE FFCRA**
**(Defendants Hollywood East Pest Control, Inc.**
**d/b/a Pestbear and Engage PEO, LLC)**

68. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 56 above as if fully set forth herein.

69. The EPSLA prohibits employers from discharging or otherwise discriminating against any employee because the employee took qualifying paid sick leave.

70. Plaintiff took qualifying sick leave due to COVID-19.

71. Plaintiff's sick leave due to COVID-19 was protected activity.

72. Despite the EPSLA's requirements, Defendants unlawfully terminated Plaintiff after he took leave as a result of his COVID-19 diagnosis.

73. An Employer who discharges, disciplines, or discriminates against an Employee in the manner described in subsection 29 CFR § 826.150 (a) is considered to have violated section 15(a)(3) of the FLSA, 29 U.S.C. 215(a)(3), and shall be subject to the enforcement provisions relevant to such violations set forth in sections 16 and 17 of the FLSA, 29 U.S.C. 216, 217.

74. Defendants violated Plaintiff's right under the EPSLA and FLSA.

75. Plaintiff's termination was an adverse employment action.

76. A causal connection exists between Plaintiff's protected activity and adverse employment action.

77. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any practice which violates the FFCRA or EPSLA;

b. Order Defendants to make Plaintiff whole, by compensating Plaintiff for lost wages and benefits, including front pay, back pay with prejudgment interest, liquidated damages, and other remuneration for physical and mental pain, anguish, pain and

humiliation from being terminated due to the loss of his long-term employment as a result of Plaintiff's diagnosis and taking of sick leave;

    c. Award attorney's fees and costs pursuant to FFCRA and EPSLA;

    d. Award punitive damages; and

    e. Award any other relief this Honorable Court deems just and proper.

## JURY TRIAL

Plaintiff hereby requests a trial by jury with respect to all claims so triable.

Respectfully submitted this 13th day of January, 2021.

*/s/ Carlos V. Leach*
Carlos V. Leach, Esq.
Florida Bar No.: 0540021
The Leach Firm, P.A.
631 S. Orlando Avenue, Suite 300
Winter Park, FL 32789
Telephone: (407) 574-4999
Facsimile: (833) 423-5864
Email: cleach@theleachfirm.com
Email: npacheco@theleachfirm.com

**Attorneys for Plaintiff**

**Alfredo >**

Mon, Sep 21, 6:18 AM

> Hey Alfredo,
>
> I've been calling the dr. Office for results and they said I should have my them today, there just has been some issues with my test. If I don't get my results, is there a way I can come in and work until the results come?

Definitely not

Wed, Sep 23, 12:33 PM



EXHIBIT "A"

**True Health - Sanford**
4930 E. Lake Mary Blvd.  Sanford, FL 32771
Phone: 4073228645  Fax: 4073222609

September 23, 2020
Page 1
Lab Report

**Christopher Gray**
Male DOB: [redacted]                                    Ins: BCBS of Florida Grp: PPO

**09/15/2020 - Lab Report: SARS CoV 2 RNA(COVID 19), QUALITATIVE NAAT**
**Provider: Peter Oostwouder, MD**
**Location of Care: True Health - Sanford**

Patient: CHRISTOPHER GRAY
ID: LAB TM879684L
Note: All result statuses are Final unless otherwise noted.

Tests: (1) SARS CoV 2 RNA(COVID 19), QUALITATIVE NAAT (39448)             NOT DETECTED   *1
       SARS CoV 2 RNA                 NOT DETECTED

A Not Detected (negative) test result for this test
means that SARS- CoV-2 RNA was not present in the specimen
above the limit of detection. A negative result does not
rule out the possibility of COVID-19 and should not be
used as the sole basis for treatment or patient management
decisions. If COVID-19 is still suspected, based on
exposure history together with other clinical findings,
re-testing should be considered in consultation with
public health authorities. Laboratory test results should
always be considered in the context of clinical
observations and epidemiological data in making a final
diagnosis and patient management decisions.

Please review the Fact Sheets and FDA authorized
labeling available for health care providers and
patients using the following websites:
https://www.questdiagnostics.com/home/Covid-19/HCP/NAAT/fact-sheet2
https://www.questdiagnostics.com/home/Covid-19/Patients/NAAT/
fact-sheet2

This test has been authorized by the FDA under an
Emergency Use Authorization (EUA) for use by authorized
laboratories.

Due to the current public health emergency, Quest
Diagnostics is receiving a high volume of samples from
a wide variety of swabs and media for COVID-19 testing.
In order to serve patients during this public health
crisis, samples from appropriate clinical sources are
being tested. Negative test results derived from
specimens received in non-commercially manufactured
viral collection and transport media, or in media and
sample collection kits not yet authorized by FDA for
COVID-19 testing should be cautiously evaluated and the
patient potentially subjected to extra precautions such
as additional clinical monitoring, including collection
of an additional specimen.

Methodology:  Nucleic Acid Amplification Test (NAAT)
includes PCR or TMA

Additional information about COVID-19 can be found
at the Quest Diagnostics website:
www.QuestDiagnostics.com/Covid19.

pg 1

Exhibit "B"

**True Health - Sanford**
4930 E. Lake Mary Blvd.   Sanford, FL 32771
Phone: 4073228645  Fax: 4073222609

September 23, 2020
Page 2
Lab Report

**Christopher Gray**
Male, DOB: ███████                                    ███████           Ins: BCBS of Florida Grp: PPO

```
Note: An exclamation mark (!) indicates a result that was not dispersed into
the flowsheet.
Document Creation Date: 09/17/2020 4:19 PM


(1) Order result status: Final
Collection or observation date-time: 09/15/2020 17:13:00
Requested date-time:
Receipt date-time:
Reported date-time: 09/17/2020 16:07:00
Referring Physician:
Ordering Physician: MDPETER OOSTWOUDER (cfpoost1)
Specimen Source:
Source: LAB
Filler Order Number: TM879684L
Lab site: MI Quest Diagnostics-Miami 10200 Commerce Pkwy Miramar FL 33025-3938
DR. Julie L Friedman
Producer ID *1:MI
```

**Electronically signed by Peter Oostwouder, MD  on 09/18/2020 at 10:18 AM**

pg 2

**ENGAGE**

# WORKSITE EMPLOYEE WARNING NOTICE

**CONFIDENTIAL**
Email to: engageteam3@engagepeo.com
OR
Fax to: 727-214-9071

| | |
|---|---|
| **Client Name:** | |
| **Employee Name:** Christopher Gray | **Department/Division:** |
| Christopher Gray | **Social Security Number:** |

☐ Verbal Warning     ☐ Written Warning     ☑ Final Warning

## VIOLATIONS
(PLEASE CHECK ALL RELEVANT BOXES)

| | |
|---|---|
| Attendance | ☐ Work Product |
| Breach of Company Policy | ☑ Safety |
| Carelessness | ☐ Tardiness |
| Conduct | ☐ Unauthorized Absence |
| Failure to Follow Instructions | ☐ Work Quality/Accuracy |
| Insubordination | ☐ Work Quality/Output |
| Job Performance | ☐ Willful Damage to Company Property |
| Other: | |

### DESCRIPTION OF VIOLATION(S)
Failure to return following his medical release to return to work. Chris has gotten results on the 18th of September and failed to notify managers to return to work on the next business day Monday September 21st and took 3 days unapproved time from work.

### REQUIRED IMPROVEMENT(S)
Chris is to abide by Branch and company policy. Any violation within the next 90 days will lead to disciplinary action and or termination

### EMPLOYEE COMMENT(S)
This write up is not correct. I received my results Yesterday Sept 23rd 2020. I physically went to the Dr's office on Sept 23rd, and picked up my results. I refuse to sign this write up due to it's lack of validity

Unless immediate and satisfactory improvement is shown and maintained, further disciplinary action will be taken, including termination.
Further misconduct or violation(s) will result in disciplinary action, up to and including immediate termination.
I have read this Warning Notice, understand it and acknowledge receipt.

| | | |
|---|---|---|
| **Employee Signature:** | **Date:** | |
| **Supervisor's Signature:** ~signature~ | **Date:** | 9-24-2020 |
| **Witness Signature:** | **Date:** | |

Worksite Employee Warning Notice – Ver1.0HR10.12

Exhibit "C"